IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE

| | |
|---|---|
| COLUMBIA ALUMINUM PRODS., LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| ENDURA PRODUCTS, INC., | ) |
| | ) |
| Defendant-intervenor. | ) |

**PUBLIC VERSION**

Consol. Court No. 19-00185

**Business Confidential Information
Removed From Pages 21-26**

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT
ON THE AGENCY RECORD**

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

Of Counsel:
Tamari J. Lagvilava
Office of Chief Counsel
U.S. Customs and Border Protection

ALEXANDER VANDERWEIDE
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-0482 or 9230
*Attorneys for Defendant*

Dated: March 7, 2023

## TABLE OF CONTENTS

I.    Administrative Determination Under Review ..................................................2

II.   Issues Presented For Review ........................................................................2

BACKGROUND ...........................................................................................................3

I.    Commerce Orders and Proceedings...............................................................3

II.   CBP Evasion Proceeding ..............................................................................5

III.  Court Proceedings.........................................................................................6

LEGAL STANDARD ...................................................................................................7

I.    The Enforce And Protect Act.........................................................................7

II.   Standard Of Review......................................................................................9

ARGUMENT ..............................................................................................................10

I.    CBP Properly Initiated EAPA Case No. 7232..............................................10

II.   Substantial Evidence of Evasion .................................................................19

CONCLUSION ...........................................................................................................26

## TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Diamond Tools Tech. LLC v. United States*
   545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021)..............................................................19

*Essar Steel Ltd. v. United States*,
   678 F.3d 1268 (Fed. Cir. 2012)...................................................................................10

*FPC v. Transcon. Gas Pipe Line Corp.*,
   423 U.S. 326 (1976)....................................................................................................10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)......................................................................................................20

*PSC VSMPO-Avisma Corp. v. United States*,
   688 F.3d 751...............................................................................................................10

i

*Royal Brush Mfg., Inc. v. United States*,
   545 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ........................................................ 20

*SKF USA Inc. v. United States*,
   263 F.3d 1369 (Fed. Cir. 2001) ............................................................................ 9

*Star Fruits S.N.C. v. United States*,
   393 F.3d 1277 (Fed. Cir. 2005) ............................................................................ 9

*Sunpreme Inc. v. United States*,
   924 F.3d 1198 (Fed. Cir. 2019) .......................................................................... 17

*Sunpreme Inc. v. United States*,
   945 F.3d 1367 (Fed. Cir. 2020) .......................................................................... 18

*Sunpreme Inc. v. United States*,
   946 F.3d 1300 (Fed. Cir. 2020) .......................................................................... 18

*United States v. Labat*,
   696 F. Supp. 1419 (D. Kan. 1988) ...................................................................... 11

*United States v. Lopez*,
   518 F.3d 790 (10th Cir. 2008) ............................................................................ 11

*WelCom Prods., Inc. v. United States*,
   865 F. Supp. 2d 1340 (Ct. Int'l Trade 2012) ........................................................ 9

*Wheatland Tube Co. v. United States*,
   161 F.3d 1365 (Fed. Cir. 1998) ............................................................................ 9

**Statutes**

19 U.S.C. § 1516a ...................................................................................................... 5

19 U.S.C. § 1677j ...................................................................................................... 3

Enforce and Protect Act,
   19 U.S.C. § 1517 .......................................................................................... *passim*

Trade Facilitation and Trade Enforcement Act of 2015,
   Pub. L. No. 114-125, 130 Stat. 122 (2016) ........................................................ 7

**Rules**

U.S. Ct. Int'l Trade R. 56.2 ................................................................................ 2, 15

**Regulations**

19 C.F.R. § 165.2 ................................................................................................ 20

19 C.F.R. § 165.21 ............................................................................................... 9

19 C.F.R. § 165.22 ............................................................................................... 9

19 C.F.R. § 165.23 ............................................................................................... 8

**Federal Register**

*Aluminum Extrusions From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders and Rescission of Minor Alterations Anti- Circumvention Inquiry*,
82 Fed. Reg. 34,630 (July 26, 2017) ................................................................. 14

*Aluminum Extrusions From the People's Republic of China: Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders*,
84 Fed. Reg. 22,445 (Dept. of Commerce May 17, 2019) ................................. 4

*Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*,
76 Fed. Reg. 30,650 (May 26, 2011) ................................................................. 3

*Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*,
76 Fed. Reg. 30,653 (May 26, 2011) ................................................................. 3

*Aluminum Extrusions From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders, and Partial Rescission*,
84 Fed. Reg. 39,805 (Dept. of Commerce August 12, 2019) ............................. 5

*Aluminum Extrusions From the People's Republic of China: Initiation of Anti-Circumvention Inquiry*,
81 Fed. Reg. 15039 (March 21, 2016) ............................................................... 14

*Aluminum Extrusions From the People's Republic of China: Initiation of Anti-Circumvention Inquiries*,
83 Fed. Reg. 9,267 (Dept. of Commerce March 5, 2018) ................................. 4

*Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group Inc., and Columbia Aluminum Products Door Thresholds*,
(Dept. of Commerce Dec. 19, 2018) ................................................................. 3

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE

_____

|  |  |
|---|---|
| COLUMBIA ALUMINUM PRODS., LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| ENDURA PRODUCTS, INC., | ) |
| | ) |
| Defendant-intervenor. | ) |
| _____ | ) |

**PUBLIC VERSION**

Consol. Court No. 19-00185

**Business Confidential Information Removed From Pages 21-26**

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Defendant, the United States (the Government), respectfully submits this response to the motion for judgment upon the agency record filed by plaintiff, Columbia Aluminum Prods., LLC (Columbia).  ECF Nos. 53, 56.  Columbia challenges U.S. Customs and Border Protection's (CBP) initiation of an investigation pursuant to the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517, into allegations from Endura Products, Inc. (Endura) that Columbia entered aluminum door thresholds by means of evasion.  Columbia also challenges CBP's determination of evasion.

As set forth below, CBP's initiation of its EAPA investigation into Columbia was proper. However, in light of this Court's decision in related litigation (*Columbia Aluminum Products, LLC v. United States*, Court No. 19-13 discussed below) that Columbia's thresholds are not within the scope of the relevant antidumping (AD) and countervailing duty (CVD) orders, the Government recognizes that Columbia's thresholds cannot legally be construed as "covered

merchandise" within the meaning of EAPA, and thus, have evaded the AD/CVD orders. Nonetheless, to preserve our arguments should the judgment in Court No. 19-13 be overturned on appeal,[1] we set forth substantial evidence that Columbia evaded the applicable AD/CVD orders.

## I.      Administrative Determination Under Review

Columbia challenges CBP's Trade Remedy & Law Enforcement Directorate (TRLED) final determination of evasion against Columbia in EAPA Case No. 7232, issued on March 20, 2019.  Confidential Admin. Rec. Doc. (C.R.) No. 25 at CBP003571-3581; Public Admin. Rec. Doc. (P.R.) No. 61 at CBP001485-1495 (TRLED Determination).  Columbia also challenges aspects of CBP's Regulations & Rulings (R&R) August 26, 2019 administrative review decision. P.R. No. 67 at CBP001544-1572 (R&R Review).

## II.     Issues Presented For Review

1. Whether CBP properly initiated an investigation into Columbia following allegations of evasion made by Endura.

2. Whether CBP's determination of evasion is supported by substantial evidence.

3.  Whether the R&R Review's conclusion that Columbia's thresholds first became "covered merchandise" as of the date that the U.S. Department of Commerce (Commerce) issued a scope ruling for Columbia's thresholds is correct.[2]

---

[1] On February 14, 2023, Defendant-Intervenor, Aluminum Extrusions Fair Trade Committee (AEFTC) filed a notice of appeal in Court No. 19-13, ECF No. 94.

[2] In its Rule 56.2 motion for judgment on the agency record, Endura challenged the R&R Review to the extent that CBP found that Columbia's thresholds became "covered merchandise" only as of the date that Commerce ruled that the thresholds became within the scope of the applicable AD/CVD orders.  ECF Nos. 54, 55.  Although Endura has since dismissed its challenge, *see* Court No. 19-190, ECF No. 22, and has moved to withdraw as defendant-intervenor in this consolidated action, *see* ECF No. 73, we address this issue below, and conclude that, given

# BACKGROUND

## I.    Commerce Orders and Proceedings

On May 26, 2011, Commerce issued AD order A-570-967 and CVD order C-570-968, which set forth its determination that door thresholds, amongst other products, made from Chinese-extruded aluminum are subject to antidumping and countervailing duties.  *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (May 26, 2011); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (May 26, 2011) (collectively, the Orders).

On March 14, 2018, Columbia submitted a request to Commerce that it issue a scope ruling that Columbia's door thresholds are outside the scope of the Orders.  Memorandum, *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group Inc., and Columbia Aluminum Products Door Thresholds*, dated December 19, 2018 (Dept. of Commerce) (Columbia Scope Ruling).  Of note, Columbia's submission did not include a request that Commerce conduct an analysis regarding whether the processing operations undertaken in Vietnam with respect to the fabrication of the thresholds substantially transformed Columbia's thresholds into a product that was not subject to the Orders.  *Id.*  On December 19, 2018, Commerce found Columbia's thresholds within the scope of the orders.  *Id.*

Separately, in March 2018, at the request of the AEFTC, Commerce initiated anti-circumvention inquiries under 19 U.S.C. § 1677j to determine whether extruded aluminum products that were exported from Vietnam by China Zhongwang Holdings Ltd. and its affiliates

---

controlling precedent issued after the R&R Review, CBP's limitation of when Columbia's thresholds first became "covered merchandise" is no longer supportable.

were circumventing the Orders through the incorporation of Chinese aluminum extrusions into the exported products.  *Aluminum Extrusions From the People's Republic of China: Initiation of Anti-Circumvention Inquiries*, 83 Fed. Reg. 9,267 (Dept. of Commerce March 5, 2018).  At that time, Commerce explained that it "intends to consider whether these inquiries should apply to all exports of extruded aluminum products from Vietnam that meet the description of the *Orders*." *Id*. at 9,269.   As explained by CBP in the R&R Review, "{t}he purpose of this anti-circumvention inquiry under section 781(b) of the [███] Act [███] is to determine whether merchandise from the country subject to the AD and/or CVD orders that is processed (*i.e.*, completed or assembled into a finished product) in a third country into merchandise of the type subject to the AD and/or CVD order should be considered to be within the scope of the AD and/or CVD order at issue."  CBP001569.

In May 2019, Commerce "preliminarily determine[d] that extruded aluminum products that are made from aluminum previously extruded in the People's Republic of China (China) and are exported from the Socialist Republic of Vietnam (Vietnam), regardless of producer, exporter, or importer, constitute merchandise completed or assembled in other foreign countries and are circumventing the antidumping duty (AD) and countervailing duty (CVD) orders on aluminum extrusions from China."  *Aluminum Extrusions From the People's Republic of China: Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 22,445 (Dept. of Commerce May 17, 2019).  At that time, Commerce directed CBP to "suspend liquidation of inquiry merchandise from Vietnam sourced from aluminum previously extruded in China, regardless of producer, exporter, or importer, entered, or withdrawn from warehouse, for consumption, on or after March 5, 2018, the date of publication of the initiation of these anti-circumvention inquiries."  *Id*. at 22,446.

In August 2019, Commerce issued a final determination affirming its preliminary

determination findings.  *Aluminum Extrusions From the People's Republic of China: Final*

*Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty*

*Orders, and Partial Rescission*, 84 Fed. Reg. 39,805 (Dept. of Commerce August 12, 2019)

(August 2019 Determination).  In particular, Commerce reaffirmed "that aluminum extrusions

exported from Vietnam, that are produced from aluminum previously extruded (including billets

created from re-melted Chinese extrusions) in China, are circumventing the *Orders*."  *Id*. at

39,806.  No interested party challenged this determination and, thus, Commerce's determination

is final and conclusive on all parties.  19 U.S.C. § 1516a.

## II.     CBP Evasion Proceeding

On February 9, 2018, CBP initiated a formal EAPA investigation, EAPA Case No. 7232,

in response to allegations of evasion filed by Endura, a domestic producer of fabricated extruded

aluminum door thresholds, first on January 11, 2018, and then supplemented on March 20, 2018.

P.R. No. 12, CBP000270-273 (Initiation); C.R. No. 2, CBP001579-1591, P.R. No. 2,

CBP000004-16 (Allegation); C.R. No. 7, CBP001733-1740, P.R. No. 16, CBP000301-308

(Supplemental Allegation).  Endura alleged that Columbia was evading the Orders by

misclassifying the thresholds as "wall plates" (goods that are outside the scope of the Orders),

and by importing thresholds from Vietnam that were manufactured using Chinese-extruded

aluminum.  *See id.*

On March 20, 2019, TRLED rendered a determination of evasion.  CBP did not

corroborate Endura's initial allegation that Columbia misclassified its thresholds as wall plates.

TRLED Determination at CBP001491, CBP003577.  But CBP did find substantial evidence that

Columbia entered aluminum door thresholds that were subject to the Orders by transshipping

Chinese-origin aluminum extrusions through Vietnam and falsely entering door thresholds assembled in Vietnam into the United States as a product of Vietnam. *Id.* As discussed further below, CBP relied on information obtained during a site visit to Vietnam as well as documents and information provided by Columbia and its suppliers. *Id*. at CBP001491-1494, CBP003577-3580. In part, CBP ordered the continued suspension of liquidation of certain entries made by Columbia as of February 9, 2018, and continued to direct that Columbia's future entries be entered as type "03" (AD/CVD) with the appropriate cash deposit. *Id*. at CBP001494, CBP003580.

R&R conducted an administrative review of TRLED's finding of evasion. On August 26, 2019, R&R affirmed TRLED's determination of evasion, in part. R&R Review at CBP001572. But R&R also reversed to the extent that it determined that Columbia's door thresholds could not become "covered merchandise," as that term is defined by EAPA, until December 19, 2018, the date when Commerce ruled that Columbia's thresholds were within the scope of the Orders. *Id*. at CBP001571-72; *see also* Columbia Scope Ruling. R&R thus found that Columbia's imported door thresholds could not meet the description of the Orders until Commerce decided the scope inquiry. *Id*.

### III.   Court Proceedings

Columbia challenged CBP's administrative determinations before this Court, and Endura joined the action as defendant-intervenor. ECF Nos. 1, 2, 16. Thereafter, a related action, *Endura Products, Inc. v. United States*, Court No. 19-190, in which Columbia joined as defendant-intervenor, was consolidated with the present action. ECF No. 48. On January 8, 2020, Columbia and Endura filed their Rule 56.2 motions for judgment on the agency record. ECF Nos. 53-56. Thereafter, on January 22, 2020, the Government filed a motion to remand the

case and to suspend the current briefing schedule.  ECF No. 57.  On December 23, 2022, the

Court issued Slip Op. 22-156, denying the Government's motion for remand, and among other

relief, ordering a resumption of briefing.

Endura moved to stay proceedings on January 6, 2023 pending a potential appeal of this

Court's judgment in *Columbia Aluminum Products, LLC v. United States et al.*, Court No. 19-13.

ECF No. 67.  In that case, in which Endura and the AEFTC joined as defendant-intervenors,

Columbia challenged Commerce's scope ruling that Columbia's door thresholds were included

within the Orders.  Ultimately, the Court sustained Commerce's Third Remand Determination

that Columbia's door thresholds are excluded from the scope of the Orders as finished

merchandise.  Court No. 19-13, ECF No. 92, Slip-Op. 22-144 (December 16, 2022) and ECF No.

93, Judgment (December 16, 2022).  On February 6, 2023, the Court denied Endura's motion to

stay.  ECF No. 70, Slip Op. 23-12.  On February 14, 2023, the AEFTC noticed an appeal of the

Court's judgment in Court No. 19-13.  Court No. 19-13, ECF No. 94.

On February 21, 2023, Endura moved to withdraw as defendant-intervenor in this

consolidated action.  ECF No. 73.  On February 22, 2023, the Court entered Endura's stipulation

of dismissal in Court No. 19-190.  Court No. 19-190, ECF No. 22.

## **LEGAL STANDARD**

### I.      **The Enforce And Protect Act**

In 2016, the President signed into law The Trade Facilitation and Trade Enforcement Act

of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016).  Title IV, Section 421 of TFTEA,

commonly referred to as the "Enforce and Protect Act" or "EAPA," established a new CBP

administrative procedure for investigating allegations of evasion of AD/CVD orders as part of

the agency's efforts to ensure a level playing field for domestic industries.  *See generally*

https://www.cbp.gov/sites/default/files/assets/documents/2016Oct/Trade%20Facilitation%20and%20Trade%20Enforcement%20Act%20of%202015%20-%20Overview.pdf.

Under EAPA, federal agencies or interested parties—including U.S. and foreign manufacturers, producers, exporters; certified unions or recognized unions or groups of workers; and trade or business associations in a particular industry—may submit allegations to CBP that merchandise covered by an AD/CVD order has entered the United States through evasion. If such allegations reasonably suggest that evasion is occurring, within 15 calendar days of receiving an allegation, CBP must initiate an investigation. 19 U.S.C. § 1517(b)(1). Within 90 calendar days, CBP must make an initial determination of whether there is reasonable suspicion of evasion and, if so, issue interim measures, which includes the suspension and extension of liquidation for certain entries. 19 U.S.C. § 1517(e). The EAPA statute grants CBP broad discretion to determine the investigation's scope and means, including the authority to collect and verify any information it deems necessary to make its evasion determination. 19 U.S.C. § 1517(c)(2). CBP's regulations set forth the types, and requirements for the submission, of factual information by parties. 19 C.F.R. § 165.23. For example, parties to the investigation may voluntarily submit information to CBP or may provide information in response to requests by CBP. *Id.* Parties to the investigation have 200 days from the date on which the investigation was initiated to submit factual information on the record, and 230 calendar days to submit written arguments. *Id.* Parties to the investigation have 15 calendar days to submit responses to other parties' written arguments. *Id.* Interested parties who are not parties to the investigation may provide information only in response to requests by CBP. *Id.*

During the investigation, CBP maintains an administrative record of material obtained and considered by CBP during the investigation, as well as record information submitted by

interested parties.  19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21.  No later than 300 calendar days

after the investigation's initiation, CBP is required to make a determination as to whether the

administrative record contains evidence to reasonably conclude that AD/CVD duties have been

evaded.  19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22.  Interested parties are permitted to

request an administrative review of the initial determination, and CBP must complete the review

and issue a final administrative review determination no later than 60 business days after such a

request.  19 U.S.C. § 1517(f).  EAPA allows for judicial review in this Court of CBP's final

administrative determination and the original determination as to evasion, provided that an action

is commenced within "30 business days" after CBP completes an administrative review under

subsection (f).  19 U.S.C. § 1517(g)(1).

## II.    Standard of Review

In reviewing CBP's evasion determinations, this Court determines whether CBP

complied with procedures under the EAPA statute and whether, in reaching its ultimate evasion

determination, any determination, finding, or conclusion made by CBP is arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law.  19 U.S.C. § 1517(g)(2).

"Courts look for a reasoned analysis or explanation for an agency's decision as a way to

determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."

*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  "An abuse of

discretion occurs where the decision is based on an erroneous interpretation of the law, on factual

findings that are not supported by substantial evidence, or represent an unreasonable judgment in

weighing relevant factors."  *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1344

(Ct. Int'l Trade 2012) (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir.

2005)).  "An agency action is arbitrary when the agency offers insufficient reasons for treating

similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

When reviewing CBP's determinations, "absent constitutional constraints or extremely compelling circumstances," this Court "will defer to the judgment of an agency regarding the development of the agency record." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (explaining the Court's role in reviewing Commerce's antidumping duty administrative determinations). "To do otherwise would 'run the risk of propelling the courts into the domain which Congress has set aside exclusively for the administrative agency.'" *Id.* (quoting *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)). Rather, "{t}he role of judicial review is limited to determining whether the record is adequate to support the administrative action." *PSC*, 688 F.3d at 761; *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (reversing order instructing Commerce to consider extra-record information because "the trial court's order usurps agency power, undermines Commerce's ability to administer the statute entrusted to it, contradicts important principles of finality, and discourages compliance").

## **ARGUMENT**

### I.   **CBP Properly Initiated EAPA Case No. 7232**

EAPA requires CBP to investigate an allegation or referral that "reasonably suggests that covered merchandise has been entered" to evade an AD or CVD order. 19 U.S.C. § 1517(b)(1). "Covered merchandise" is defined as merchandise subject to an AD or CVD order. 19 U.S.C. § 1517(a)(3). An evasion occurs when covered merchandise is entered by a material and false document, statement, or act, or material omission, which results in a cash deposit, security, or applicable AD or CVD amount being reduced or not applied. 19 U.S.C. § 1517(a)(5).

Thus, an EAPA investigation is validly commenced when an allegation or referral reasonably suggests to CBP that merchandise subject to an AD or CVD order has been entered by a material and false document, statement, or act, or by means of a material omission, and results in a cash deposit, security, AD or CVD not being properly collected.   An allegation or referral need not definitively prove that an evasion of merchandise subject to an AD or CVD order has occurred before CBP may commence an EAPA investigation.  Rather, EAPA specifies that CBP shall initiate an investigation of an allegation or referral that "reasonably suggests" that an evasion of covered merchandise has taken place.  Whether an allegation or referral ultimately results in a finding that covered merchandise has been entered, whether by evasion or not, is not dispositive of the reasonableness of the initial allegation or referral.

We note that whereas Section 1517(b) uses the term "reasonably suggests," Section 1517(e) employs the term "reasonable suspicion"; however, both provisions, in effect, impose a reasonable suspicion standard.  Indeed, courts have often construed the terms in connection with one another.  *See, e.g., United States v. Lopez*, 518 F.3d 790, 797 (10th Cir. 2008) ("{R}easonable suspicion can exist even if each individual observation is susceptible of innocent explanation.  Rather, even factors that are entirely innocent when taken separately can support a lawful detention if, taken together, they *reasonably suggest* the presence of illegal conduct." (internal citation omitted) (emphasis added)); *United States v. Labat*, 696 F. Supp. 1419, 1423 (D. Kan. 1988) ("A reasonable suspicion exists when specific and articulable facts, together with rational inferences drawn from such facts, *reasonably suggest* possible criminal activity." (emphasis added)).  Thus, the terms "reasonably suggests" in Section 1517(b) and "reasonable suspicion" in Section 1517(e) are essentially interchangeable.  Any difference in terminology is likely attributable to differences in the stages of CBP's investigation.  When deciding whether to

initiate an investigation under Section 1517(b), CBP is limited to the facts contained in the allegation or the referral.  Later, when deciding whether to impose interim measures pursuant to Section 1517(e), CBP will have already begun the investigation and, thus, will have additional information before it for consideration.

Here, CBP found that Endura's January 11, 2018 allegation reasonably suggested that Columbia was evading cash deposits on aluminum door thresholds from China and misclassifying its thresholds as plastic wall plates in order to avoid antidumping duties. Initiation at CBP000270-273.  In particular, CBP considered Columbia's Chinese-based manufacturer of aluminum extrusions, and the timing and nature of Columbia's import, cataloguing, and classification practices with respect to when the Orders were implemented and the dates of Commerce's anti-circumvention inquiries.  *Id*. at 273.  CBP determined that "{t}his reasonably suggests that Columbia's shipments of wall plates are misclassified and are actually shipments of aluminum door thresholds, being entered through evasion."  *Id*.; *see also* C.R. No. 9, CBP001799-1806, P.R. 18, CBP000365-372 (Notice of Initiation & Interim Measures) (discussing in further detail the foundation for the initiation of EAPA Case No. 7232).

Endura's March 20, 2018 supplemental filing also alleged that Columbia was transshipping Chinese-origin aluminum extrusions through Vietnam.  Supplemental Allegation at CBP001733-1740.  Even though the Supplemental Allegation had no bearing on CBP's decision to initiate an investigation into Columbia within 15 business days of Endura's initial allegation, we note that in its May 17, 2018 Notice of Initiation & Interim Measures, CBP found that the evidence provided by Endura in support of its supplemental allegation of evasion "suggest[s] that during the period of investigation, Columbia has received multiple shipments of covered merchandise from Vietnam, consisting of aluminum extrusions from China."  Notice of Initiation

& Interim Measures at CBP00370, CBP001804.  *See also id*. at CBP00371, CBP001805, when

discussing the imposition of interim measures on Columbia's entries of thresholds ("The

evidence provided by Columbia in its two responses, along with the information contained in the

Allegation, reasonably suggests that Columbia is importing door thresholds from Vietnam, made

from aluminum profiles extruded in China, and subject to the scope of A-570-967.").

      Endura's allegations of evasion are invariably predicated on the plain language of the

Orders, wherein Commerce specifically determined that door thresholds made from Chinese-

extruded aluminum were subject to antidumping and countervailing duties: "Subject extrusions

may be identified with reference to their end use, such as fence posts, electrical conduits, **door**

**thresholds**, carpet trim, or heat sinks …. Such goods are subject merchandise if they otherwise

meet the scope definition, regardless of whether they are ready for use at the time of

importation."  Orders at 30,651 (emphasis added).  Further, the Orders provide that imported

goods containing aluminum components may also be described as parts or subassemblies of

finished products assembled post-importation:

> Subject aluminum extrusions may be described at the time of
> importation as parts for final finished products that are assembled
> after importation, including, but not limited to, window frames,
> door frames, solar panels, curtain walls, or furniture.  Such parts
> that otherwise meet the definition of aluminum extrusions are
> included in the scope.  The scope includes the aluminum extrusion
> components that are attached (*e.g.,* by welding or fasteners) to
> form subassemblies, *i.e.,* partially assembled merchandise unless
> imported as part of the finished goods 'kit' defined further below.
> The scope does not include the non-aluminum extrusion
> components of subassemblies or subject kits.

*Id*. at 30,650-51.  Thus, CBP reasonably determined when it initiated its EAPA investigation into

Columbia that the subject door thresholds were within the scope of the Orders:

> As the AD order on aluminum extrusions from China applies to
> aluminum extrusions within scope, regardless of subsequent

> assembly, a door threshold from Vietnam, made from an aluminum profile extruded in China, would be subject to AD duties.  The scope language of this AD order, A-570-967, expressly includes "the aluminum extrusion components that are attached (*e.g.,* by welding or fasteners) to form subassemblies, *i.e.,* partially assembled merchandise…

Notice of Initiation & Interim Measures at CBP000371, CBP001805.

Further, in summarizing reasons for initiating the investigation, CBP noted in the TRLED Determination that Commerce had previously determined that certain thresholds imported by Columbia were within the scope of the Orders:

> In *Aluminum Extrusions from the People's Republic of China*, 82 Fed. Reg. 34,630 (Dep't Commerce July 26, 2017) the Department of Commerce (DOC) ruled in response to a scope ruling request from Columbia that its imports of aluminum door thresholds made by 5050-grade aluminum alloy fall within the scope of A-570-967 and C-570-968, the two orders at issue in this investigation.[3]

CBP001487, CBP003573 at fn. 9.

While Commerce's determination may reinforce the TRLED Determination's conclusion that goods such as Columbia's door thresholds are subject to the Orders, and thus, are "covered merchandise" and within the purview of a validly initiated EAPA investigation, the decision is not required to reach that conclusion.  The plain language of the Orders alone was sufficient for CBP to determine that Endura's allegations reasonably suggested that Columbia's imports of door thresholds consisting of Chinese-extruded aluminum components were "covered merchandise."

---

[3] TRLED was mistaken; Commerce's July 26, 2017 determination was in response to an anti-circumvention inquiry initiated by the AEFTC, not a scope ruling request from Columbia.  *See Aluminum Extrusions From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders and Rescission of Minor Alterations Anti- Circumvention Inquiry*, 82 Fed. Reg. 34,630 (July 26, 2017) (July 2017 Determination); *Aluminum Extrusions From the People's Republic of China: Initiation of Anti-Circumvention Inquiry*, 81 Fed. Reg. 15039 (March 21, 2016).

Accordingly, beginning on May 26, 2011, when the Orders were issued, door thresholds made from Chinese-extruded aluminum, whether imported by Columbia or another importer, have arguably constituted "covered merchandise" under 19 U.S.C. § 1517.  Although this Court's December 16, 2022 judgment in Court No. 19-13 has since held otherwise, Endura's allegations of evasion were reasonably set forth *at the time they were made*, and as a result, the EAPA investigation into Columbia's imported door thresholds was properly initiated in accordance with 19 U.S.C. § 1517(b)(1).

In its Rule 56.2 motion, Columbia contends that CBP lacked a statutory basis to initiate EAPA Case No. 7232 against Columbia because "CBP did not—and could not—match the physical characteristics of the imported Columbia Aluminum merchandise with the language of the *Orders*."  ECF No. 53, Pl. Mot. at 5.  Columbia advances several arguments to support this contention, all of which fall short of demonstrating that CBP's EAPA investigation into Columbia was not properly initiated.

First, Columbia argues that its door thresholds have not been subject to the Orders since the Orders were issued in 2011 because thresholds are finished merchandise, which are specifically excluded from the Orders.  Pl. Mot. at 6.  Alternatively, Columbia seems to argue that to the extent its thresholds are covered merchandise, CBP acknowledged in the R&R Review that it lacked a basis to find evasion before December 19, 2018, the date when Commerce decided Columbia's scope ruling request.  *Id.*; *see also* R&R Review; Columbia Scope Ruling.  In addition, Columbia maintains that Commerce's July 26, 2017 anti-circumvention determination, cited by TRLED above, "made no finding about Columbia, nor did it address whether thresholds assembled in Vietnam containing an aluminum extrusion component are within scope [███████]."  Pl. Mot. at 7; *see also* July 2017 Determination.

15

Similarly, Columbia posits that Commerce's August 2019 Determination "did not involve Columbia or its assembled thresholds."  Pl. Mot. at 7-8; August 2019 Determination.  Taken together, Columbia concludes that "CBP lacked the statutory basis to initiate the EAPA investigation against Columbia on February 9, 2018."  Pl. Mot. at 8-9.  Columbia is incorrect.

Commerce explicitly rejected Columbia's contention that its goods fall within the finished merchandise exception to the Orders when it determined that the subject thresholds are within scope of the Orders.  *See* Columbia Scope Ruling.  That Commerce has since abandoned this position, under protest, in accordance with the Court's judgment in Court No. 19-13, wherein the Court sustained Commerce's Third Remand Determination that Columbia's thresholds are finished merchandise excluded from the scope of the Orders, does not then render Endura's allegations of evasion unreasonable in hindsight.  Initiating a valid EAPA investigation is predicated on reasonable suggestion from the outset, not on the retroactive finality of administrative or court proceedings.

Columbia's arguments that it is not specifically included in Commerce's July 2017 and August 2019 anti-circumvention determinations are also largely inapposite to the question of whether Columbia's thresholds are covered merchandise for purposes of initiating an EAPA investigation.  These are blanket determinations, applying to *any* producer, exporter, or importer, not just Columbia, whose goods meet the descriptions of the determinations.  *See* July 2017 Determination (finding that heat treated Chinese-extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy regardless of producer, exporter, or importer are circumventing the Orders); August 2019 Determination (finding that all aluminum extrusions produced from Chinese-extruded aluminum and exported from Vietnam are circumventing the Orders).  These determinations, made years after the publication of the Orders,

16

merely underscore that merchandise manufactured from Chinese-extruded aluminum and/or exported from Vietnam were subject to the Orders.  But Commerce's determinations are not directly relevant to the question of whether CBP's investigation into Columbia accorded with EAPA in the first place.  EAPA only requires that an allegation reasonably suggest to CBP that covered merchandise was entered through evasion.  On that score, Endura's allegations meet that permissive statutory threshold, and no subsequent agency determination, whether made by CBP or Commerce, or judicial decision, retrospectively alters the reasonableness of that referral, and initiation of an investigation in response thereto.

Admittedly, R&R largely concurred with Columbia's alternative argument that the subject thresholds could not be considered covered merchandise under EAPA until December 19, 2018, the date when Commerce decided Columbia's scope ruling.  R&R Review at CBP001571-72.  R&R considered Commerce's anti-circumvention proceedings and the Columbia Scope Ruling, among other factors, to make the following conclusion:

> The legal effect of Commerce's anti-circumvention inquiry under Section 781(b) and subsequent determination is to bring aluminum extrusions entered on or after May 5, 2018 from Vietnam, and made from aluminum previously extruded in China, within the scope of the *Orders*.  However, not all aluminum extrusions exported from Vietnam are brought within the scope of the *Orders,* rather only those that meet the description of the *Orders*.  On December 19, 2018, the date that Commerce decided Columbia's scope inquiry, Columbia's door thresholds exported from Vietnam were brought within the description and scope of the *Orders* and became "covered merchandise" under 19 U.S.C. § 1517(a)(3).

*Id*. at 1571.  In so concluding, however, the R&R Review relied on *Supreme Inc. v. United States*, 924 F.3d 1198 (Fed. Cir. 2019), for the proposition that CBP cannot resolve a scope issue in the first instance, and as such, only Commerce's scope determination is dispositive of whether merchandise is covered by the Orders.  *See id*. at fn. 79.

The United States Court of Appeals for the Federal Circuit has since vacated *en banc* the panel decision in *Sunpreme*. *See Sunpreme Inc. v. United States*, 945 F.3d 1367 (Fed. Cir. 2020). In reversing the panel's constriction of CBP's authority to determine whether a particular product is subject to antidumping or countervailing duties, the Federal Circuit explained that, as part of CBP's responsibility to fix the amount of duty on imported goods, "Customs is both empowered and obligated to determine in the first instance whether goods are subject to existing antidumping or countervailing duty orders." *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1317 (Fed. Cir. 2020).  The Federal Circuit further stated that "{w}hile Customs may not expand or alter the scope of such orders, its authority and responsibility to determine whether they apply does not dissipate simply because an order lacks perfect clarity." *Id.*

Although *Sunpreme* did not directly concern EAPA, the *en banc* decision gets to the heart of the first issue posed to this Court: whether an EAPA investigation is valid when initiated in response to a reasonable allegation that imported goods have been entered in order to evade—in the judgment of CBP in the first instance—an existing AD or CVD order.  The R&R Review, relying on the vacated *Sunpreme* panel decision, concluded that only Commerce can make such a determination in the first instance.  Columbia concurs and roots its challenge to the viability of the EAPA investigation in part on R&R's conclusion.  However, the *en banc* decision forcefully holds to the contrary, and renders untenable the premise underpinning the R&R Review's conclusion and Columbia's challenge to the initiation of the investigation.  CBP is not obliged to defer to Commerce before it initiates an EAPA investigation.  Rather, CBP is *obligated* in the first instance to make a judgment call as to whether merchandise is subject to the Orders, and is therefore, covered merchandise.  *See Diamond Tools Tech. LLC v. United States*, 545 F. Supp.

3d 1324, 1350 (Ct. Int'l Trade 2021) (finding that the "EAPA statute empowers {CBP} to …

determine whether entries under an investigation are 'covered merchandise.'").

Accordingly, to the extent that the conclusions set forth in the R&R Review have been

invalidated by the *en banc Sunpreme* decision, as a legal matter, we respectfully request that the

Court set aside the R&R Review's conclusion that Columbia's thresholds only became "covered

merchandise" as of December 19, 2018.

## II.    Substantial Evidence of Evasion

Columbia also challenges CBP's determination in the R&R Review that Columbia

imported covered merchandise by means of evasion from December 19, 2018 through March 20,

2019.  Pl. Mot. at 9.  Columbia claims that "{t}he administrative record, however, is bereft of

any evidence supporting its conclusion, let alone the required substantial evidence."  *Id*.

(emphasis omitted).  As noted above, this Court has entered judgment in Court No. 19-13 that

Columbia's thresholds are excluded from the scope of the Orders.  The Government

acknowledges that if the thresholds are excluded from the Orders, then they cannot constitute

covered merchandise within the meaning of EAPA, and therefore, cannot be said to have evaded

the Orders.  The Court's judgment would ostensibly support Columbia's challenge to CBP's

determination that Columbia entered covered merchandise through evasion.  However, the

Court's judgment has since been appealed.  Accordingly, to preserve our arguments should the

Court's judgment in Court No. 19-13 be overturned on appeal, we respond to Columbia's

arguments below.[4]

---

[4] Given the significant bearing that the outcome of the appeal in Court No. 19-13 may have on our defense of this action, we respectfully request that the Court stay entry of any final judgment in this action pending the finality of all proceedings in Court No. 19-13.

During an EAPA investigation, CBP "shall make a determination, based on substantial evidence, with respect to whether covered merchandise was entered into the customs territory of the United States through evasion."  19 U.S.C. § 1517(c)(1)(A).  Substantial evidence requires only that an agency articulate "a 'rational connection between the facts found and the choice made.'"  *Royal Brush Mfg., Inc. v. United States*, 545 F. Supp. 3d 1357, 1365 (Ct. Int'l Trade 2021) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)).  That another conclusion could rationally be drawn from the record evidence does not defeat an agency's determination.  *Id.*

TRLED concluded that "{t}he factual record includes substantial evidence that Columbia transshipped aluminum thresholds from China through Vietnam during the period of investigation."  TRLED Determination at CBP001492, CBP003578.  In accordance with 19 C.F.R. § 165.2, the period of investigation is January 19, 2017, one year prior to the date that CBP acknowledged receipt of Endura's first allegation of evasion, through March 20, 2019, the date when TRLED rendered its final determination.  *See* P.R. No. 5, CBP000253-254 (TRLED Receipt); *see also* Notice of Initiation & Interim Measures at CBP000366-67, CBP001800-01 ("Accordingly, the entries covered by this investigation are those entered for consumption, or withdrawn from a warehouse for consumption, from January 19, 2017 through the pendency of this investigation.  *See* 19 CFR § 165.2").  Although R&R limited the investigation period to only those entries made on or after December 19, 2018, the date when Commerce issued its scope ruling for Columbia's thresholds, as explained in the preceding section, R&R's conclusion is no longer supportable in light of the *en banc Sunpreme* decision.  Accordingly, we discuss TRLED's findings of evasion for the entirety of the investigation period.

During the course of its investigation, TRLED issued multiple Requests for Information (RFI) to Columbia, its purported Vietnamese-based suppliers of aluminum extrusions—Houztek Architectural Products, Co. Ltd. (Houztek), [███████████████████████████████████ ████████], and [███████████████████████████]—and its Chinese supplier of aluminum extrusions, [██████████████████████████████████]. TRLED Determination at CBP001489-90, CBP003575-76. In September 2018, CBP also conducted site verification visits of Houztek and [████████]. *Id.* at CBP001490, CBP003576.

"Houztek explained to CBP that they only assemble door thresholds for Columbia,"— Houztek's only customer—"using plastic parts from China and extruded aluminum from Vietnam." TRLED Determination at CBP001492-93, CBP003578-79. Yet in response to a RFI, "Houztek stated it is a subsidiary of [████], a Chinese manufacturer which was also Columbia's supplier of aluminum extrusions. Houztek furthermore confirmed that prior to February 9, 2018, it procured all aluminum profiles from [████]." *Id.* at CBP001490, CBP003576. During CBP's visit to Houztek, "Houztek further explained that from February 1, 2018 through the end of June 2018, it was purchasing aluminum extrusions from both [██████████] in Vietnam and from [████] in China." *Id.* During the site visit, Houztek confirmed that a May 18, 2018 shipment exported from Vietnam, and imported by Columbia on June 7, 2018, "was the earliest shipment of door thresholds that would include extruded aluminum from [██████████]." *Id.* at CBP001490-91, CBP003576-77.

In a July 18, 2018 voluntary submission from Columbia, Columbia "indicated that [████ ██████] was its extruder in Vietnam," and Houztek the assembler of the thresholds. TRLED Determination at CBP001492, CBP003578. Yet in response to a February 7, 2018 RFI, Columbia produced a certificate of origin, stamped by Houztek, that door thresholds imported by

Columbia on August 20, 2017 were assembled in Vietnam from Chinese-origin extruded aluminum profiles and plastic components. *Id*. at CBP001489-90, CBP003575-76. "Columbia also provided an invoice from [███] to Houztek as well as a packing list and bills of lading for delivery of the component parts (plastic and extruded aluminum) from China to Vietnam." *Id*. at CBP001490, CBP003576.

Despite the assurances of Columbia and Houztek that the origin of the aluminum extrusions in Columbia's thresholds had (or were) shifting from China to Vietnam, TRLED found that "Houztek continued to assemble door thresholds for Columbia using Chinese-extruded aluminum from sources other than [████████████]." TRLED Determination at CBP001492, CBP003578; *see also* Pl. Mot. at 10 (Columbia's "Second" Argument). Indeed, during CBP's September 2018 site verifications, "the Director of [████] explained to CBP that they are a trading company and do not manufacture any products." *Id*. And further, "{t}hrough September 13, 2018, [██████] was involved in only [███] shipments of door thresholds to Columbia and did not source extrusions from [███ █] which it considered too expensive." *Id*. As such, at this late stage of the investigatory period, if neither [████████████] sourced any or sufficient quantities of extruded aluminum for the thresholds that Houztek assembled for Columbia, then it was reasonable for CBP to conclude that [███], the Chinese manufacturer and supplier, was the likely the source of the extrusions.

This finding is further bolstered by evidence on the record that, although "[██████] provided some extrusions to Houztek during the period of investigation," it did so at "far less than the amount of aluminum Houztek required to produce all of the door thresholds manufactured and sold to Columbia." TRLED Determination at CBP001492, CBP003578. As

TRLED explained, "Houztek supplies several styles of door thresholds to Columbia.  Each style requires a unique die to extrude the aluminum profile required to precisely fit into the fully assembled door threshold."  *Id*.; *see also* Pl. Mot. at 11-12 (Columbia's "Fourth" Argument).  However, Houztek furnished [          ] with just two of these dies to make extrusions for Houztek, only one of which [          ] then provided Houztek with aluminum extruded from the die, and even then, it did so in insufficient quantities to account for all of the door thresholds Houztek assembled for Columbia.  *Id*.  This is evidenced by Invoice No. [          ], dated May 15, 2018, from Houztek to Columbia, which corresponds to Columbia Entry No. [          ]9361, dated June 7, 2018.  *Id*. at CBP001490-92, CBP003576-78; *see also* C.R. No. 10, Attachment 1 to Columbia's July 2, 2018 Voluntary Submission at CBP001813-25, P.R. No. 25, Attachment 1 to Columbia's July 2, 2018 Voluntary Submission at CBP000391-403 (Entry Papers).  This invoice contained four aluminum door threshold product codes—[          ]—but only the die for the [     ] products were provided to [          ] by Houztek.  TRLED Determination at CBP001492, CBP003578; Entry Papers.  As for the [     ] products, "Houztek admitted that it used extruded aluminum profiles from [     ] to fulfill the order for the [          ] and [          ] thresholds on Invoice [          ] to Columbia."  TRLED Determination at CBP001492, CBP003578.  Columbia does not dispute this admission in its Rule 56.2 motion.  *See* Pl. Mot. at 12-13 (Columbia's "Sixth" Argument).

CBP's September 2018 site visit to Houztek revealed additional discrepancies and deficiencies in the Vietnamese assembler's operations, which further augments the substantial evidence that Houztek continued to use aluminum extrusions from [     ] when assembling door thresholds for Columbia.  For instance, the aluminum profiles in Houztek's warehouse did not

contain any marks, stamps, or serial numbers, which would indicate the actual manufacturer of the profile.  TRLED Determination at CBP001493, CBP003579.  Indeed, "{f}rom February 2018 through June 2018, [████████] sent aluminum profile number [██████████████ ████████████████████████████████] to Houztek; [████] provided these identical aluminum profiles to Houztek during the same period."  *Id.*  Even though Houztek's inventory contained nearly the same number of profiles from [████] as [██████████], it was unable to produce records that a particular lot of aluminum profiles in their inventory was used in a particular threshold assembly run.  *Id.*; *see also id.* ("Since February 1, 2018, Houztek claimed it has received [██████] extruded aluminum profiles from [██████████] and [██████] profiles from [████].").  Moreover, Houztek's warehouse did not have separately designated areas for the profiles from [██████████] and those from [████].  *Id.*  Tellingly, CBP observed that "{a}ll the aluminum profiles in the facility had a white square piece of paper with [████████] printed on them and set on top of each pallet of aluminum profiles."  *Id.*  Columbia largely glosses over and fails to reconcile these findings from CBP's site visit in its Rule 56.2 motion.  *See* Pl. Mot. at 12 (Columbia's "Fifth" Argument) and at 13-14 (Columbia's "Finally" argument).

That Houztek commingled extrusions from China and its Vietnamese sources is not in doubt.  According to Columbia's Vice President, Columbia has been aware, since at least November 2017, that Houztek was using Chinese-origin extrusions in the assembly of its imported thresholds.  P.R. No 33, August 2018 Columbia Letter and Affidavits at CBP001211-12.  Although Columbia considered itself a "victim of such a fraud" by Houztek, it continued to import thresholds assembled by Houztek until new production lines were in place.  *Id.*

Taken together, in addition to certain communications on the record between Columbia and Houztek indicating awareness of its transshipment scheme, TRLED reasonably concluded

24

that the administrative record contains substantial evidence "that during the period of investigation, Columbia imported door thresholds made with aluminum sourced from a Chinese extruder."  TRLED Determination at CBP001494, CBP003580.  Although R&R incorrectly limited the investigatory period to a three-month window between the Columbia Scope Ruling and the TRLED Determination, we note that R&R upheld all other factual findings by TRLED.  R&R Review at CBP001571.

Notwithstanding the above evidence and admissions of evasion, Columbia advances several arguments in purported support of its position that the record is devoid of any evidence of evasion.  Pl. Mot. at 10-14.  However, Columbia's arguments are primarily focused on the narrow December 19, 2018 through March 20, 2019 window of the R&R Review.  Columbia's arguments largely accord with TRLED's determination that during a significant portion of the TRLED investigatory period, substantial evidence of evasion exists.

For instance, Columbia essentially concedes that Houztek continued to source aluminum extrusions from [███], its Chinese affiliate, throughout much of the period of TRLED's investigation (*i.e.,* through [████████]), but that in July 2018 Columbia began "switching suppliers and moving to new supply chains."  Pl. Mot. at 10 (internal quotation marks omitted); *see also* Pl. Mot. at 13.  Although we do not dispute that Columbia began making such arrangements at this time, Columbia's arguments nonetheless recognize that even when [████ █████] began shipping door thresholds to Columbia between [███████████████████] (instead of Houztek exclusively), of the [████] containers of thresholds shipped during this period, [███] of the containers were of thresholds that continued to be assembled by [███████].  *Id.* at 10-11.

Similarly, Columbia's arguments acknowledge that it was only in [▇▇▇▇▇▇] when

[▇▇▇▇▇▇] possessed the dies which allowed it to extrude the aluminum for the production of

Columbia's [▇▇▇▇▇▇] style thresholds.  Pl. Mot. at 11.  This acknowledgment accords

with Houztek's admission that it used [▇▇▇]-sourced aluminum for the [▇▇▇] style thresholds

just months prior, and CBP's determination that [▇▇▇▇▇▇] provided aluminum extrusions to

Houztek at far less quantities than was required for Houztek to produce the door thresholds

manufactured and sold to Columbia.

In sum, should the Court's judgment in Court No. 19-13 be overturned, substantial

evidence on the record exists that Columbia entered thresholds that evaded the Orders for nearly

the entirety of the TRLED investigatory period.  Accordingly, the findings and conclusions of

evasion in the TRLED Determination should be upheld.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain the TRLED

Determination of evasion as supported by substantial evidence, not arbitrary and capricious, and

is otherwise in accordance with law.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

26

<u>/s/ Alexander Vanderweide</u>

Of Counsel:                                     ALEXANDER VANDERWEIDE
Tamari J. Lagvilava                          Senior Trial Counsel
Office of Chief Counsel                   Department of Justice, Civil Division
U.S. Customs and Border Protection   Commercial Litigation Branch
                                                      26 Federal Plaza – Room 346
                                                      New York, New York 10278
                                                      Tel. (212) 264-0482 or 9230
                                                      *Attorneys for Defendant*

Dated: March 7, 2023

27

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this response brief contains 7467 words, excluding any materials excluded from those Procedures' requirements, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Alexander Vanderweide