Slip Op. 24-3

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **COLUMBIA ALUMINUM PRODUCTS, LLC,**<br><br>                              Plaintiff,<br><br>                    v.<br><br>**UNITED STATES,**<br><br>                              Defendant. | **Before:  Timothy C. Stanceu, Judge**<br><br>**Court No. 19-00185** |

## OPINION AND ORDER

[Granting relief on plaintiff's motion for judgment on the agency record and denying defendant's request for a stay of the entry of judgment pending an appeal in a separate proceeding]

Dated: January 16, 2024

*Jeremy W. Dutra*, Squire Patton Boggs (US) LLP, of Washington, D.C., for plaintiff.  With him on the briefs was *Peter J. Koenig*.

*Alexander J. Vanderweide*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for defendant.  With him on the brief was *Justin R. Miller*, Attorney-in-Charge, and *Aimee Lee*, Assistant Director.  Also on the brief were *Patricia M. McCarthy*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., and *Brian M. Boynton*, Principal Deputy Assistant Attorney General.  Of counsel on the brief was *Tamari J. Lagvilava*, Attorney, Office of the Chief Counsel, U.S. Customs and Border Protection, of Washington, D.C.

Stanceu, Judge: Plaintiff Columbia Aluminum Products, LLC ("Columbia

Aluminum" or "Columbia") contests determinations by U.S. Customs and Border

Protection ("Customs" or "CBP") that Columbia's imports of certain "door thresholds"

from Vietnam evaded antidumping and countervailing duty orders on aluminum

extrusions from the People's Republic of China ("China" or "the PRC").  Before the

court is Columbia's motion for judgment on the agency record, submitted under USCIT

Rule 56.2, which defendant opposes.  Also before the court is defendant's request for a

stay of any judgment in favor of Columbia pending the outcome of certain appellate

litigation.  The court grants relief on Columbia's Rule 56.2 motion, orders Customs to

submit a redetermination expeditiously, and denies defendant's request for a stay.

## I. Background

Background on this case is set forth in a prior opinion of the court, *Columbia

Aluminum Products, LLC. v. United States*, 46 CIT __, __, 609 F. Supp. 3d 1405, 1406–08

(2022), and is supplemented herein.

### A.  The Contested Determinations

Columbia contests CBP's final determination that Columbia's imports evaded the

antidumping and countervailing duty orders on aluminum extrusions from China (the

"Final Evasion Determination").  *Notice of Final Determination as to Evasion* (Mar. 20,

2019), P.R. Doc. 61 ("*Final Evasion Determination*").[1]  The "Trade Remedy & Law

Enforcement Directorate," or "TRLED," entity within Customs issued this

---

[1] Documents in the Administrative Record (Oct. 23, 2019), ECF Nos. 24 (Public), 25 (Conf.) and the Joint Appendix (Apr. 28, 2023), ECF Nos. 82 (Public), 83 (Conf.) are cited herein as "P.R. Doc. __."  All citations to record documents are to the public versions of these documents.

determination under "subsection (c)" of Title IV, Section 421 of the Trade Facilitation

and Enforcement Act (the "Enforce and Protect Act" or "EAPA"), 19 U.S.C. § 1517(c).[2]

In the Final Evasion Determination, Customs concluded that the door thresholds

Columbia imported from Vietnam were "covered merchandise" for purposes of the

EAPA, i.e., merchandise covered by the antidumping and countervailing duty orders

pertaining to China, and that they were entered into the United States "through

evasion." *Final Evasion Determination* at 1.

Columbia also contests an "Administrative Review Determination" that the

"Regulations and Rulings," or "R&R," entity within Customs issued under subsection

421(f) of the EAPA ("subsection (f)"), 19 U.S.C. § 1517(f), in which Customs

administratively affirmed in part, and reversed in part, its Final Evasion Determination.

*Enforce and Protect Act ("EAPA") Case Number 7232* (Aug. 26, 2019), P.R. Doc. 67

("*Admin. Review Determination*").  In the Administrative Review Determination,

Customs again found evasion but on appeal limited its finding of evasion to Columbia's

entries of door thresholds from Vietnam that were made on or after December 19, 2018.

*Id*. at 2.

### B.  The Antidumping and Countervailing Duty Orders

The International Trade Administration, U.S. Department of Commerce

("Commerce" or the "Department"), issued in 2011 the antidumping duty order (the

---

[2] Citations to the United States Code are to the 2018 edition.

"AD Order"), and the countervailing duty order (the "CVD Order") (collectively, the

"Orders"), on aluminum extrusions from the People's Republic of China.  *Aluminum*

*Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg.

30,650 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the*

*People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade

Admin. May 26, 2011) ("*CVD Order*").

### C.  Allegations of Evasion of the Orders

The contested decisions resulted from an EAPA investigation that Customs

initiated in response to allegations by Endura Products, Inc. ("Endura"), a domestic

producer of door thresholds.  *EAPA Case Number 7232: Initiation of Investigation* (Feb. 9,

2018), P.R. Doc. 12.

Customs declined to take action in response to an allegation by Endura that

Columbia evaded the AD Order by misclassifying its imported door thresholds as "wall

plates."  *Final Evasion Determination* at 2, 6; *Admin. Review Determination* at 2 (identifying

the allegation as having been submitted by Endura on January 11, 2018), 2 n.5

(affirming the decision not to proceed on that allegation).  Endura did not contest CBP's

decision declining to act on this allegation.  *Admin. Review Determination* at 2 n.5.[3]

---

[3] Endura Products, Inc., formerly a defendant-intervenor, withdrew from this action.  Motion to Withdraw (Feb. 21, 2023), ECF No. 73; Order (Mar. 14, 2023), ECF No. 76.

In a supplemental filing dated March 20, 2018, Endura alleged that Columbia was evading the AD Order by importing door thresholds assembled in Vietnam using aluminum extrusions of Chinese origin.[4] *Id*. at 2.  Customs acted upon this allegation, as described below.

### D.  "Interim Measures" and Subsequent Actions by Customs

In response to Endura's March 20, 2018 allegation, Customs notified Columbia that "[b]ecause the evidence thus far uncovered establishes a reasonable suspicion that Columbia has entered covered merchandise into the United States through evasion, CBP has imposed interim measures pursuant to 19 CFR § 165.24."  *Notice of Initiation of Investigation and Interim Measures* at 1 (May 17, 2018), P.R. Doc. 18.  The "Interim Measures" included "rate-adjusting" the entries subject to the investigation for the collection of cash deposits, requiring "live entry" for "all future imports of products believed to be aluminum thresholds by Columbia" such that "all entry documents and duties must be provided before cargo is released by CBP into U.S. commerce," and extending and suspending liquidation of entries.  *Id*. at 6–7.

---

[4] In the March 20, 2018 submission, "Endura newly alleged that Columbia was importing door thresholds assembled by Houztek Architectural Products Company, Ltd. ('Houztek') in Vietnam using Chinese-origin aluminum extrusions furnished by Shanghai Top Ranking Aluminum Products Co., Ltd. ('STR') of China, and exported from Vietnam, to evade the payment of antidumping duties on aluminum extrusions from China."  *Enforce and Protect Act ("EAPA") Case Number 7232* at 2 (Aug. 26, 2019), P.R. Doc. 67 ("*Admin. Review Determination*").

The Final Evasion Determination concluded that:

> Evidence and observations collected by the CBP site verification team as
> well as communications between Columbia and Houztek indicate that
> Houztek used Chinese-extruded aluminum in producing door thresholds
> for the [*sic*] Columbia, the use of which renders Columbia's imports of
> door thresholds into the United States subject to the duty orders at issue in
> this investigation.

*Final Evasion Determination* at 8.  The Final Evasion Determination continued the Interim

Measures.  *Id.* at 9.

The Administrative Review Determination affirmed the Final Evasion

Determination only "with respect to entries of door thresholds on or after December 19,

2018" and reversed it "with respect to entries of door thresholds before December 19,

2018."  *Admin. Review Determination* at 28.  Customs chose the beginning date of

December 19, 2018 for its affirmative determination of evasion because that was the

date Commerce, after conducting a "scope inquiry," issued a "Scope Ruling" on ten

models of door thresholds Columbia imported from China.[5]  *Antidumping and*

---

[5] The Administrative Review Determination stated as follows:

> Commerce decided the scope inquiry on December 19, 2018, and
> determined that completed door thresholds were covered by the *Orders*.
> Commerce's delay in issuing the ruling highlights that there was not an
> overt or obvious case that completed thresholds are within the scope of
> the *Orders*.  Because the scope ruling was issued on December 19, 2018,
> CBP's suspension of liquidation and requirement for cash deposits should
> not apply to completed door thresholds Columbia imported before
> December 19, 2018, the date Commerce decided the scope inquiry.  All
> pertinent Columbia imports at issue occurred before that date.

(continued . . .)

*Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China:*

*Final Scope Rulings on Worldwide Door Components, Inc., MJB Wood Group, Inc., and*

*Columbia Aluminum Products Door Thresholds* (Int'l Trade Admin. Dec. 19, 2018) ("*Scope*

*Ruling*").[6]

  The door thresholds at issue in the Scope Ruling issued by Commerce were not

"aluminum extrusions" as defined by the Orders.  Each door threshold was produced

in China and contained an "aluminum extrusion," as defined by the Orders, among

other, non-aluminum components, including components made of polyvinyl chloride

("PVC") and, for some models, injection molded wood filled plastic substrate.  *Scope*

*Ruling* at 13–14.  Commerce concluded in the Scope Ruling that an aluminum extrusion

component in each door threshold, but not any of the other components in the

assembly, was subject to the Orders.  *Id*. at 33.

### E.  Plaintiff's Rule 56.2 Motion, Defendant's Motion for a Remand, and Defendant's Opposition to Plaintiff's Rule 56.2 Motion

  Plaintiff commenced this action on October 1, 2019, Summons, ECF No. 1,

Compl., ECF No. 2, and moved for judgment on the agency record pursuant to USCIT

_____

*Admin. Review Determination* at 13.

 [6] The referenced Scope Ruling, as issued by the International Trade Administration, U.S. Department of Commerce, improperly was omitted from the administrative record despite having been considered during the administrative proceeding resulting in this litigation.  The document was made available on access.trade.gov (document barcode 3784481-01).

Rule 56.2 in early 2020.  Pl. Columbia Aluminum Products, LLC's Rule 56.2 Mot. for J.

on the Agency R. (Jan. 8, 2020), ECF Nos. 53 (Conf.), 56 (Public) ("Columbia's Motion");

Mem. of Points and Authorities in Supp. of Pl. Columbia Aluminum Products, LLC's

Rule 56.2 Mot. for J. on the Agency R. (Jan. 8, 2020), ECF Nos. 53 (Conf.), 56 (Public)

("Columbia's Br.").

 After Columbia filed its Rule 56.2 motion, defendant moved for a "voluntary

remand" and a suspension of the current briefing schedule, citing a decision by the U.S.

Court of Appeals for the Federal Circuit (the "Court of Appeals"), *Sunpreme Inc. v.*

*United States*, 946 F.3d 1300 (Fed. Cir. 2020).  Def.'s Mot. for Voluntary Remand and to

Suspend the Current Briefing Schedule (Jan. 22, 2020), ECF No. 57.  The court denied

the motion for a remand but allowed additional time for the filing of a response to

Columbia's motion.  *Columbia Aluminum Products, LLC. v. United States*, 46 CIT __, 609

F. Supp. 3d 1405 (2022).

 Defendant United States opposed Columbia's motion.  Def.'s Resp. to Pl.'s Rule

56.2 Mot. for J. on the Agency R. (Mar. 7, 2023), ECF Nos. 74 (Conf.), 75 (Public) ("Def.'s

Resp.").  Columbia replied to defendant's opposition.  Pl. Columbia Aluminum

Products, LLC's Reply in Further Supp. of its Rule 56.2 Mot. for J. on the Agency R.

(Apr. 6, 2023), ECF No. 80 ("Columbia's Reply").

## II. Discussion

### A.  Jurisdiction and Standard of Review

The court exercises jurisdiction according to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), pursuant to which the court reviews actions commenced under the EAPA, including actions contesting a determination by Customs that "covered merchandise was entered into the customs territory of the United States through evasion."  19 U.S.C. § 1517(g)(1).

The court is directed by Congress to decide whether a determination of evasion issued by Customs under 19 U.S.C. § 1517(c), or a *de novo* administrative review of such a determination of evasion issued by Customs under 19 U.S.C. § 1517(f), "is conducted in accordance with those subsections" by examining "whether the Commissioner fully complied with all procedures under subsections (c) and (f)" and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id*. § 1517(g)(2).

### B.  The Final Evasion Determination and the Administrative Review Determination

In issuing the Final Evasion Determination and the Administrative Review Determination, Customs committed multiple errors, both of fact and of law.  The errors are discussed below.

### 1.  The Record Does Not Support CBP's Finding that "Columbia 'Transshipped' Aluminum Door Thresholds from China through Vietnam"

Both the Final Evasion Determination and the Administrative Review

Determination rest, in part, upon unsupported findings of fact.  In the Final Evasion

Determination, Customs found that "[s]ubstantial evidence demonstrates that

Columbia imported aluminum door thresholds made from aluminum extruded in

China by transshipping the thresholds through Vietnam and falsely declaring the

country of origin." *Final Evasion Determination* at 1.  Similarly, the Final Evasion

Determination states as a finding that "[t]he factual record includes substantial evidence

that Columbia transshipped aluminum thresholds from China through Vietnam during

the period of investigation."[7]  *Id*. at 7.  While reducing the time period for the finding of

"transshipment," the Administrative Review Determination impliedly incorporates

these errors:

> Based upon our *de novo* review of the administrative record in this case . . .
> with respect to the issue of transshipment, the March 20 Determination of
> evasion under 19 USC § 1517(c) is:
>
> AFFIRMED, IN PART, with respect to entries of door thresholds on or
> after December 19, 2018; and
>
> REVERSED, IN PART, with respect to entries of door thresholds before
> December 19, 2018.

---

[7] Customs defined the "period of investigation" as applying to entries of
merchandise beginning on January 19, 2017 and "through the pendency of the
investigation."  *Notice of Initiation of Investigation and Interim Measures* at 1–2 (May 17,
2018), P.R. Doc. 18.

*Admin. Review Determination* at 27–28.  The uncontradicted record evidence was that the

door thresholds subject to CBP's investigation were not "aluminum" door thresholds

and that they were produced in Vietnam, not in China.  *See, e.g.*, *Admin. Review*

*Determination* at 8.  In both determinations, Customs addressed record evidence that it

characterized as showing that some of these door thresholds were assembled in

Vietnam using, among various other, non-aluminum-extrusion components, a

Chinese-origin component part (described by Customs as an aluminum "profile," *see*

*e.g.*, *Final Evasion Determination* at 8) that was made from an aluminum extrusion.

Columbia asserts that "[t]here is no genuine dispute that the thresholds

Columbia Aluminum imported from Vietnam are multi-component products fully and

permanently assembled before importation" and that "[w]hile each door threshold

contains an aluminum extrusion, the aluminum component is not the principal

contributor to the weight, value, or functionality of the finished threshold products."

Columbia's Reply 6 (citations omitted).  Defendant does not dispute these specific

assertions.  *See* Def.'s Resp. 19–26.

Neither the Final Evasion Determination nor the Administrative Review

Determination cites record evidence that Columbia, during the period of investigation,

obtained "aluminum door thresholds" from China, that it "transshipped" aluminum

thresholds from China through Vietnam, or that it falsely declared the country of origin

of these door thresholds as products of Vietnam instead of China.  These findings are

arbitrary and capricious and, therefore, invalid when viewed according to the standard

of review.

## 2.  The Final Evasion Determination Erroneously Interpreted the Orders to Apply to Merchandise Produced in a Third Country

The scope languages of the AD Order and of the CVD Order, which essentially

are the same, apply to "aluminum extrusions" from the PRC made of specified

aluminum alloys.  The scope language defines the term "aluminum extrusions" as

"shapes and forms, produced by an extrusion process" and provides that following

extrusion they remain within the scope even if subjected to further fabrication and

finishing.  *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653.

A provision in the scope language, the "subassemblies" provision, extends the scope of

the Orders to aluminum extrusion components that, at the time of importation, are

attached to non-aluminum extrusion components to form what the Orders describe as

"subassemblies, i.e., partially assembled merchandise," but "[t]he scope does not

include the non-aluminum extrusion components of subassemblies."  *AD Order*,

76 Fed. Reg. at 30,650–01; *CVD Order*, 76 Fed. Reg. at 30,654.

The Orders also contain a "finished merchandise exclusion," which reads as

follows:

> The scope also excludes finished merchandise containing aluminum
> extrusions as parts that are fully and permanently assembled and
> completed at the time of entry, such as finished windows with glass,
> doors with glass or vinyl, picture frames with glass pane and backing
> material, and solar panels.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

The Final Evasion Determination concluded that Columbia "entered into the customs territory of the United States through evasion merchandise covered by antidumping duty (AD) order A-570-976 and covered by countervailing duty order C-570-968." *Final Evasion Determination* at 1 (footnotes citing *Orders* by Federal Register publication omitted). In so concluding, Customs misinterpreted the Orders.

The Final Evasion Determination found that the Vietnamese producer of the assembled door thresholds, Houztek Architectural Products Company, Limited ("Houztek") used Chinese-extruded aluminum in producing door thresholds for Columbia in Vietnam, "the use of which renders Columbia's imports of door thresholds into the United States subject to the duty orders at issue in this investigation." *Id*. at 8. This conclusion was incorrect. A Chinese-origin extruded aluminum component, if present within an assembled door threshold produced in Vietnam and imported into the United States by Columbia, would not convert such a good to "covered merchandise."

Customs found in the Administrative Review Determination that "[t]he record evidence shows that the door thresholds were completed or assembled in Vietnam

using Chinese-origin aluminum and non-aluminum extrusions components" and that

"[t]he record evidence also shows that the door thresholds were exported from

Vietnam." *Admin. Review Determination* at 21.  The Administrative Review

Determination concluded that "[t]he *Orders*, as written, do not address the country of

origin of products assembled in other foreign countries from aluminum profiles

extruded in China." *Id*. at 22.  It concluded, further, that "[t]here is no indication that

the *Orders*, as written, were intended to cover door thresholds completed or assembled

in another foreign country, and exported from another foreign country." *Id*.

        In opposing Columbia's Rule 56.2 motion, defendant does not argue that the

Administrative Review Determination was incorrect in its decision that the Orders as

written did not apply to door thresholds assembled in Vietnam using a Chinese-origin

extruded aluminum component.  Nor does defendant seek a remand for

reconsideration of this decision.  Therefore, defendant has waived any objection to that

decision.  Even were defendant not to have waived any objection, the court still would

conclude that the Orders as issued in 2011 do not pertain to merchandise produced in,

and exported from, countries other than China.  *See AD Order*, 76 Fed. Reg. at 30,650

(stating that Commerce "is issuing an antidumping duty order on aluminum extrusions

*from the People's Republic of China ('PRC')*" (emphasis added); *CVD Order*, 76 Fed. Reg. at

30,653 (stating that Commerce "is issuing a countervailing duty order on aluminum

extrusions *from the People's Republic of China ('PRC')*" (emphasis added)).  Although the

"subassemblies" provision, discussed previously, extends the scope to include certain "partially assembled merchandise" containing an aluminum extrusion as a component part, nothing in the Orders provides that an assembled good produced in a third country and incorporating a Chinese-origin aluminum extrusion as a component part is within the scope that the Orders specify.

While correctly interpreting the Orders as issued in 2011 not to apply to goods produced in a third country, the Administrative Review Determination commits errors of law in interpreting two determinations issued by Commerce—the "Circumvention Determination" and the Scope Ruling—as discussed below.

### 3. The Administrative Review Determination Misinterpreted the Effect of the Circumvention Determination and the Scope Ruling, Neither of Which Pertained to the Issue in the EAPA Proceeding

For its determination of evasion, the Administrative Review Determination relies on a "Circumvention Determination" that Commerce issued in 2019 following an inquiry initiated under Section 781(b) of the Tariff Act, 19 U.S.C. § 1677j(b). *See Aluminum Extrusions From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty Orders and Partial Recission*, 84 Fed. Reg. 39,805 (Int'l Trade Admin. Aug. 12, 2019) ("*Circumvention Determination*"). That reliance was misplaced. Although the Circumvention Determination, unlike the Orders as issued in 2011, applies to goods produced in a third country (Vietnam), it applies only to "aluminum extrusions" exported from Vietnam that are produced from aluminum

previously extruded in China.  Read according to its express terms, the Circumvention

Determination does not apply to an assembled good exported from Vietnam in which

an aluminum extrusion is only a component among non-aluminum-extrusion

components within that assembled good.

Based on the Circumvention Determination and the Scope Ruling, Customs

concluded in the Administrative Review Determination that the assembled door

thresholds Columbia imported from Vietnam were "covered merchandise" under the

EAPA.  Customs reached this conclusion by reasoning as follows:

> The legal effect of Commerce's anti-circumvention inquiry under Section
> 781(b) and subsequent determination is to bring aluminum extrusions
> entered on or after May 5, 2018 from Vietnam, and made from aluminum
> previously extruded in China, within the scope of the *Orders*.  However,
> not all aluminum extrusions exported from Vietnam are brought within
> the scope of the *Orders*, rather only those that meet the description of the
> *Orders*.  On December 19, 2018, the date that Commerce decided
> Columbia's scope inquiry, Columbia's door thresholds exported from
> Vietnam were brought within the description and scope of the *Orders* and
> became "covered merchandise" under 19 U.S.C. § 1517(a)(3).

*Admin. Review Determination* at 27 (footnote omitted).  The first sentence, which is

addressed to imported "aluminum extrusions," is irrelevant to this case, as Columbia

did not import aluminum extrusions from Vietnam.  The conclusion in the remainder of

the paragraph is a non-sequitur.

On the issue of where the aluminum extrusion components within Columbia's

door thresholds were extruded, Customs made the following factual findings:

Although the record evidence shows that some door thresholds assembled
in Vietnam by Houztek may have been made using aluminum extruded in
Vietnam, CBP's site verification of Houztek's facility revealed that the
inventory of aluminum profiles did not contain marks, stamps or serial
numbers, and was not otherwise segregated to allow for the separate
identification of such products.  In addition, inventory records could not
be provided to demonstrate that a particular lot of aluminum profiles was
removed from inventory and used in a particular assembly operation run.
Accordingly, the record supports a conclusion that aluminum previously
extruded in China was used in Houztek's production of aluminum door
thresholds exported to the United States.

*Id*. (footnotes omitted).  The Administrative Review Determination proceeded to

conclude, invalidly, that "Columbia thus falsely entered the door thresholds exported

from Vietnam on entry type '01' consumption entries, instead of on entry type '03'

AD/CVD entries" and that Columbia falsely omitted the antidumping duty and

countervailing duty investigation numbers from its entry summaries.  *Id*.  Customs

determined, ultimately, that "[t]hese false statements and omissions were material

because they resulted in the non-payment, i.e., evasion, of applicable AD and CVD cash

deposits" and that "there is substantial record evidence that on or after December 19,

2018 [the date of the Scope Ruling], covered merchandise, that is, door thresholds with

aluminum extruded in China and exported from Vietnam, was entered into the United

States by means of evasion, as defined in 19 U.S.C. § 1517(a)(5)(A)."  *Id*.

An affirmative determination of circumvention Commerce reaches under Section

781(b) of the Tariff Act, 19 U.S.C. § 1677j(b), is a fact-specific determination by

Commerce with respect to merchandise "of the same class or kind" as merchandise that

is subject to an antidumping or countervailing order and that, prior to importation into the United States, is "completed or assembled" in a foreign country other than the country to which that order applies, i.e., a "third" country.  Commerce may direct action under 19 U.S.C. § 1677j(b) to merchandise that is either "completed" in the third country, or "assembled" in the third country, or both.

Here, the Circumvention Determination applies to merchandise that, following operations in the third country (in this instance, Vietnam) remain "aluminum extrusions" that are exported to the United States.  *Circumvention Determination*, 84 Fed. Reg. at 39,806.  Commerce, "after taking into account any advice provided by the [U.S. International Trade] Commission . . ., may include such imported merchandise within the scope" of the order if three conditions are met.  19 U.S.C. § 1677j(b).  The "process of assembly or completion" in the third country must be "minor or insignificant," the value of the merchandise produced in the country to which the antidumping or countervailing duty order applies must be "a significant portion of the total value of the merchandise exported to the United States," and Commerce must determine that taking action under 19 U.S.C. § 1677j(b) "is appropriate . . . to prevent evasion" of the antidumping or countervailing duty order.  *Id*. § 1677j(b)(1)(C)–(E).  Commerce made no such findings as to a good assembled in Vietnam using a Chinese-origin aluminum extrusion as a component part.

Based on the plain meaning of the Circumvention Determination, Columbia argues that "[t]he anti-circumvention inquiry did not involve Columbia or its assembled thresholds."  Columbia's Br. 7 (citing *Circumvention Determination*, 84 Fed. Reg. at 39,806); Columbia's Reply 4 ("Commerce's circumvention determination had nothing to do with the merchandise at issue.").  The court agrees.

The Federal Register notice announcing the Circumvention Determination is inconsistent with the overly broad interpretation Customs placed upon it.  The Circumvention Determination applies, expressly, to "*aluminum extrusions exported from Vietnam*, that are produced from aluminum previously extruded in the People's Republic of China (China)."  *Circumvention Determination*, 84 Fed. Reg. at 39,805 (emphasis added).  In the Circumvention Determination, Commerce determined, specifically, "that aluminum extrusions exported from Vietnam, that are produced from aluminum previously extruded (including billets created from re-melted Chinese extrusions) in China, are circumventing the *Orders*."  *Id.*, 84 Fed. Reg. at 39,806. Contrary to the CBP's assumption, Commerce did not include in the Circumvention Determination goods exported from Vietnam that are *not* aluminum extrusions but merely contain an aluminum extrusion as a component in an assembled good. Underlying, publicly available documentation, of which the court takes judicial notice, further confirms that the circumvention inquiry was directed solely to aluminum

extrusions, and not assemblies merely containing them, that are exported from

Vietnam.

Commerce initiated "anti-circumvention inquiries" upon the request of

petitioner Aluminum Extrusions Fair Trade Committee "to determine whether

extruded aluminum products that are exported from the Socialist Republic of Vietnam

(Vietnam) by China Zhongwang Holdings Ltd. and its affiliates (collectively,

Zhongwang) are circumventing the antidumping duty (AD) and countervailing duty

(CVD) orders on aluminum extrusions from the People's Republic of China (China)."

*Aluminum Extrusions From the People's Republic of China: Initiation of Anti-Circumvention*

*Inquiries*, 83 Fed. Reg. 9,267, 9,267 (Int'l Trade Admin. Mar. 5, 2018).  Commerce defined

the "inquiry merchandise" as follows: "These inquiries cover *aluminum extrusions* that

are made from aluminum previously extruded in China that meet the description of the

*Orders and are exported from Vietnam*, regardless of producer, exporter or importer

(inquiry merchandise)."  *Issues and Decision Mem. for the Final Affirmative Determination of*

*Circumvention Concerning Aluminum Extrusions from the People's Republic of China* at 5

(Int'l Trade Admin. July 31, 2019) ("*I&D Mem.*") (emphasis added) (footnote omitted);[8]

---

[8] The referenced Issues and Decision Memorandum, as issued by the International Trade Administration, U.S. Department of Commerce, is available at access.trade.gov (document barcode 3872841-01).

*See Circumvention Determination*, 84 Fed. Reg. at 39,806, Appendix I (incorporating *I&D Mem.* by reference).

Commerce extended the scope of the Circumvention Determination to aluminum extrusions of Vietnamese producers other than Zhongwang but established a certification procedure allowing importers and exporters of the Vietnamese aluminum extrusions of such other producers (with certain exceptions) to certify that their aluminum extrusions completed in Vietnam do not contain aluminum previously extruded in China. *Circumvention Determination*, 84 Fed. Reg. at 39,806–07, Appendix II. To that end, the certifications were required to contain the following language:

> The[] aluminum extrusions completed (including extruded) in Vietnam do not contain aluminum previously extruded in China (including billets created from remelted Chinese extrusions), regardless of whether sourced directly from a Chinese producer or from a downstream supplier.

*Id.*, 84 Fed. Reg. at 39,807–08, Appendices III [Importer Certification], IV [Exporter Certification]. The certifications plainly are limited to "aluminum extrusions" completed in Vietnam. Commerce neither extended the Circumvention Determination, nor structured the required certifications, to apply to products produced in, and exported from, Vietnam that are not aluminum extrusions but merely *contain* an aluminum extrusion as a component within an assembled good.

Defendant's brief could be read to imply that the Circumvention Determination Commerce issued in 2019, and another anti-circumvention determination Commerce

issued in 2017, support the evasion determinations contested in this litigation.

According to defendant, "[t]hese determinations, made years after the publication of the

Orders, merely underscore that merchandise manufactured from Chinese-extruded

aluminum and/or exported from Vietnam were subject to the Orders."  Def.'s Resp.

16–17.  This characterization is incorrect.  As discussed above, the 2019 Circumvention

Determination did not apply to assembled goods produced in Vietnam that were not

themselves aluminum extrusions.

The 2017 anti-circumvention determination also is inapposite, applying only to

imports into the United States of "heat-treated extruded aluminum products" from

China.  *See Aluminum Extrusions From the People's Republic of China: Affirmative Final*

*Determination of Circumvention of the Antidumping and Countervailing Duty Orders and*

*Recission of Minor Alterations Anti-Circumvention Inquiry*, 82 Fed. Reg. 34,630, 34,631 (Int'l

Trade Admin. July 26, 2017).  The 2017 anti-circumvention determination applied to "all

imports *from the PRC* of heat-treated extruded aluminum products that meet the

chemical specifications for 5050-grade aluminum alloy, regardless of producer,

exporter, or importer."  *Id*. (emphasis added).

The issue resolved in the 2017 anti-circumvention determination was whether

the scope of the Orders should be expanded under section 781(d) of the Tariff Act,

19 U.S.C. § 1677j(d), to include, as "later-developed merchandise," aluminum extrusions

made of 5050-grade alloy (not originally covered by the Orders) and heat treated.  *See*

*Aluminum Extrusions From the People's Republic of China: Initiation of Anti-Circumvention Inquiry,* 81 Fed. Reg. 15,039 (Mar. 21, 2016) ("*Initiation Notice*"); *Aluminum Extrusions From the People's Republic of China: Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders and Intent To Rescind Minor Alterations Anti-Circumvention Inquiry*, 81 Fed. Reg. 79,444, 79,445 (Int'l Trade Admin. Nov. 14, 2016) (explaining that the petitioner sought an inquiry on such products exported by Zhongwang but that "[w]e also indicated in our *Initiation Notice* that we intended to consider whether the inquiry should apply to all such imports of extruded aluminum products, regardless of producer, exporter, or importer, *from the PRC*") (emphasis added). The Federal Register notices on this proceeding, of which the court also takes judicial notice, refute defendant's position that the proceeding was directed to imports of any type of merchandise produced in Vietnam.

Although Customs, in the Administrative Review Determination, correctly concluded that the Orders as issued did not apply to merchandise produced in a third country (such as here, Vietnam), it also presumed, erroneously, that in combination with the Circumvention Determination the Orders had the opposite effect, i.e., that the Circumvention Determination extended the scope of the Orders to pertain to merchandise assembled in a third country (here, Vietnam) that contained a Chinese-origin aluminum extrusion as a component part. *Admin. Review Determination* at 27.

The Administrative Review Determination also misconstrued the effect of the Scope Ruling.  The scope inquiry Commerce conducted, and therefore the Scope Ruling as well, applied only to assembled door thresholds that were produced in, and that were imported from, China.  *See*, *e.g.*, *Aluminum Extrusions From the People's Republic of China: Notice of Court Decisions Not in Harmony With Final Scope Ruling and Notice of Amended Final Scope Rulings Pursuant to Court Decisions*, 87 Fed. Reg. 80,160, 80,161 (Int'l Trade Admin. Dec. 29, 2022) ("Commerce will instruct U.S. Customs and Border Protection (CBP) that, pending any appeals, the cash deposit rate will be zero percent for entries of . . . Columbia's door thresholds *produced in China*.") (emphasis added). Therefore, the Administrative Review Determination failed to recognize that the Scope Ruling lent no support to the agency decision, i.e., the Final Evasion Determination, upon which Customs was conducting a *de novo* review and which involved merchandise produced in Vietnam.

### 4.  Columbia Has Demonstrated Its Right to Relief under USCIT Rule 56.2

In summary, Customs committed multiple errors, both of fact and of law, in concluding that the door thresholds Columbia imported from Vietnam were "covered merchandise" and that imports of this merchandise evaded the Orders.  Columbia, therefore, has demonstrated that the Final Evasion Determination and the Administrative Review Determination cannot be sustained under the judicial standard of review and, therefore, must be set aside as contrary to law.  *See* 19 U.S.C. § 1517(g)(2)

(requiring the court to decide if "any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

Defendant opposes Columbia's Rule 56.2 motion.  In its opposition, defendant argues that: (1) Customs properly initiated an investigation into Columbia following allegations of evasion made by Endura, Def.'s Resp. 2, 10–19; (2) CPB's determination of evasion is supported by substantial evidence, *id*. at 2, 19–26; and (3) CPB's conclusion by its Regulations & Rulings entity that Columbia's thresholds only became "covered merchandise" as of the date that Commerce issued the Scope Ruling is incorrect and should be set aside, *id*. at 2, 17–19.

The grounds upon which defendant opposes Columbia's Rule 56.2 motion are misguided.  The record does not support a conclusion that the investigation, in the entirety, was properly initiated.  Customs initiated the investigation on May 17, 2018 upon two allegations by Endura.  The first allegation, which Customs described as having been made on January 11, 2018, was that "Columbia was importing extruded aluminum door thresholds—also referred to as door sills—from China, and misclassifying the door thresholds . . . as plastic wall plates . . . to evade the payment of antidumping duties on aluminum extrusions from China."  *Admin. Review Determination* at 2.  The second allegation by Endura, made in a supplemental submission dated March 20, 2018, was "that Columbia was importing door thresholds assembled by Houztek Architectural Products Company, Limited ('Houztek') in Vietnam using

Chinese-origin aluminum extrusions furnished by Shanghai Top Ranking Aluminum Products Co., Ltd. ('STR') of China, and exported from Vietnam, to evade the payment of antidumping duties on aluminum extrusions from China." *Id*.

The first allegation by Endura, were it proved to be correct, would have demonstrated evasion of the Orders. The second allegation by Endura was insufficient on its face. Even if presumed true as a factual matter, it would not have made out a *prima facie* allegation of evasion of the Orders, which, for the reasons the court has discussed, never applied to assembled door thresholds produced in a third country (here, Vietnam) using as components "aluminum extrusions" as defined in the Orders. Had Customs correctly interpreted the scope of the Orders at that time (rather than discovering its interpretive error only during the administrative appeal proceeding), it necessarily would have rejected Endura's March 20, 2018 allegation. For this reason, the court cannot agree with defendant's contention that the investigation, in the entirety, was properly initiated. Defendant maintains that it was sufficient for initiation that an allegation "'reasonably suggests that covered merchandise has been entered' to evade an AD or CVD order." Def.'s Resp. 10 (quoting 19 U.S.C. § 1517(b)(1)). This argument overlooks the point that CBP's initial misinterpretation of the scope of the Orders was an error of law, not of fact. Because the March 20, 2018 allegation, on its face, failed to allege facts under which it validly could be concluded that Columbia had entered covered merchandise, the investigation was *not* properly initiated with respect to it.

Customs issued the Final Evasion Determination on March 20, 2019, exactly one

year after the second allegation from Endura.  In that decision, Customs concluded as

follows:

> CPB was unable to corroborate Endura's initial claim that Columbia
> misclassified subject merchandise as wall plates.  However, substantial
> evidence demonstrates that Columbia transshipped Chinese-origin
> aluminum extrusions through Vietnam and falsely entered the
> merchandise into the customs territory of the United States as a product of
> Vietnam without requisite AD/CVD imposed under the orders.

*Final Evasion Determination* at 6.  As discussed above, the agency's conclusions that

"transshipment," and false entry as a "product of Vietnam," occurred were

unsupported by record evidence.  These conclusions, moreover, went well beyond

Endura's second allegation, which was the one on which Customs chose to proceed.  *See*

*Admin. Review Determination* at 2.

Endura's second allegation was facially insufficient for the reasons the court

discussed previously.  At the unspecified time Customs found Endura's "plastic wall

plates" allegation to be "uncorroborated," *id.*, the investigation, then based only on

Endura's invalid March 20, 2018 allegation, should have been terminated.  At that time

Customs also should have terminated the Interim Measures Customs first imposed in

the May 17, 2018 Notice of Initiation and unlawfully continued after the unspecified

date upon which Customs decided not to proceed upon Endura's allegation pertaining

to plastic wall plates.

Defendant's second argument, which is that CBP's determination of evasion is supported by substantial evidence, Def.'s Resp. 2, 19–26, is also unavailing.  Defendant describes this record evidence in detail, *id*. at 21–26, but defendant presents all of this evidence only to show that Customs permissibly could find that some of the extruded aluminum components used in the assembly of Columbia's door thresholds in Vietnam were of Chinese origin.  For the reasons explained above, the possible presence of a Chinese-origin extruded aluminum component within one of the Columbia door thresholds assembled in Vietnam using that component, among other, non-aluminum-extrusion components, would not convert the finished door threshold into an item of "covered merchandise" under the Orders.  Thus, even were the court to presume that defendant's "substantial evidence" argument is correct, defendant still would have failed to demonstrate that imports of Columbia's door thresholds from Vietnam could have evaded the Orders.

It follows that defendant's third argument also is incorrect.  Defendant relies on the *en banc* decision of the Court of Appeals in *Sunpreme Inc. v. United States*, 945 F.3d 1367 (Fed. Cir. 2020), for the proposition that the Administrative Review Determination impermissibly limited the agency's determination of evasion to entries made on or after December 19, 2018.  Def.'s Resp. 18.  Defendant states that "[a]ccordingly, to the extent that the conclusions set forth in the R&R Review have been invalidated by the *en banc Sunpreme* decision, as a legal matter, we respectfully request that the Court set aside the

R&R Review's conclusion that Columbia thresholds only became 'covered merchandise' as of December 19, 2018." *Id.* at 19.  The court cannot accede to this request because both of CBP's determinations wrongly concluded that Columbia's imports of door thresholds from Vietnam were "covered merchandise."  As Columbia argues, the Administrative Review Determination concluded, correctly, that the Orders as issued did not "cover thresholds assembled in Vietnam allegedly using Chinese-origin extruded aluminum" and "[t]he *en banc* decision in *Sunpreme* thus has no bearing on the disposition of this action."  Columbia's Reply 2 (citation omitted).

### 5.  Defendant's Request to Stay the Entry of Judgment

A footnote in defendant's response to Columbia's Rule 56.2 motion states as follows: "Given the significant bearing that the outcome of the appeal in Court No. 19-13 may have on our defense of this action, we respectfully request that the Court stay any entry of final judgment in this action pending the finality of all proceedings in Court No. 19-13."  Def.'s Resp. 19 n.4.  The request is not a proper motion for a stay. Nevertheless, even were it a proper motion, the court would deny it.  Defendant has failed to demonstrate that the appeal it cites is likely to have a bearing on its defense of this action.

In referring to "the appeal in Court No. 19-13," defendant is referring to litigation in this Court in which Columbia successfully contested the Scope Ruling and obtained a judgment from this Court sustaining a decision (the "Third Remand Redetermination")

that Commerce, under protest, submitted to this Court in response to *Columbia*

*Aluminum, LLC v. United States*, 46 CIT __, __, 607 F. Supp. 3d 1275, 1283 (2022)

("*Columbia IV*").  The Aluminum Extrusions Fair Trade Committee is pursuing an

appeal of that judgment.  Notice of Docketing, CAFC Appeal No. 2023-1534 (Feb. 24,

2023), Ct. No. 19-00013, ECF No. 95.

The Third Remand Redetermination determined under protest that door

thresholds Columbia imported from China were excluded from the Orders under the

"finished merchandise exclusion" in the scope language of the Orders, which, as

discussed previously, excludes from the scope "finished merchandise containing

aluminum extrusions as parts that are fully and permanently assembled and completed

at the time of entry, such as finished windows with glass, doors with glass or vinyl,

picture frames with glass pane and backing material, and solar panels."  *AD Order*,

76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

Even were the judgment in *Columbia IV* vacated upon appeal and the Orders

ruled to apply to the aluminum extrusion components within the Chinese-origin door

thresholds that were the subject of the Scope Ruling, it would not follow that the Final

Evasion Determination or the Administrative Review Determination also would be

sustained as a result of any future appellate litigation involving this action.  As the court

explained above, the determinations Customs made under the EAPA contained

multiple errors of fact and law, including the conclusion that the Scope Ruling provided

support to a finding of evasion in the EAPA investigation.

**6. The Court Orders Expeditious Submission of a Redetermination upon Remand that Responds to this Opinion and Order and Addresses the Interim Measures**

While concluding that a stay of the entry of judgment is not warranted, the court

also exercises its discretion to withhold entering judgment at this time.  The court is

directing that Customs, in response to a remand order, submit a new EAPA

determination (a "Redetermination on Remand") for the consideration of this court and

Columbia that is consistent with this Opinion and Order.  The Redetermination on

Remand must be submitted on an expedited basis and must address the actions

Customs will take with respect to the Interim Measures it previously imposed.

### III.  CONCLUSION AND ORDER

For the reasons discussed in the forgoing, upon consideration of plaintiff's

Rule 56.2 motion for judgment on the agency record and all papers and proceedings

had herein, and upon due deliberation, it is hereby

**ORDERED** that plaintiff's Rule 56.2 motion be, and hereby is, granted; it is further

**ORDERED** that the Final Evasion Determination and the Administrative Review Determination be, and hereby are, set aside as contrary to law; it is further

**ORDERED** that Customs, within 30 days of the date of this Opinion and Order, shall submit to the court a Redetermination upon Remand that is consistent with this Opinion and Order and addresses the actions it will take with respect to the Interim Measures it previously imposed; it is further

      **ORDERED** that plaintiff shall have 15 calendar days to submit comments on the Redetermination upon Remand; and it is further

      **ORDERED** that defendant shall have 10 calendar days from the submission of plaintiff's comments to submit a response thereon.

/s/ Timothy C. Stanceu      
Timothy C. Stanceu
Judge

Dated: January 16, 2024
   New York, New York